NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

DEC 20 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OSCAR LUNA-AQUINO,

Defendant-Appellant.

No.    20-50234

D.C. Nos.
3:20-cr-00439-LAB-1
3:20-cr-00439-LAB

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted December 9, 2021
Pasadena, California

Before:  BERZON and BEA, Circuit Judges, and BENNETT,[**] District Judge.

Appellant Oscar Luna-Aquino ("Luna") was convicted of importation of

methamphetamine, in violation of 21 U.S.C. § 960, after he was stopped at a port of

entry with approximately 95 pounds of pure methamphetamine concealed in his

vehicle. At trial, the sole issue in dispute was whether Luna had knowledge of the

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

drugs he was transporting. On appeal, Luna asserts that four isolated questions by the prosecutor drew attention to his failure to testify in violation of his Fifth Amendment privilege against compelled self-incrimination.[1] For the following reasons, we affirm Luna's conviction.

"To realize the Fifth Amendment's guarantee against compelled self-incrimination, the Supreme Court has held that it is improper for a prosecutor to comment on a defendant's decision not to testify." *United States v. Preston*, 873 F.3d 829, 842 (9th Cir. 2017) (citing *Griffin v. California*, 380 U.S. 609, 615 (1965)). A prosecutorial comment will violate this rule "'if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.'" *Rhoades v. Henry*, 598 F.3d 495, 510 (9th Cir. 2010) (citation omitted).

As a component of its case for knowledge, the Government introduced translations of Spanish-language text messages Luna exchanged with two unknown and unidentified contacts, "Pedro, Jr." and "Jr." During its direct examination of Ruth Monroy—a translation expert from the United States Attorney's Office and the

---

[1] Luna also suggests that the court erred when it declined to instruct the jury to find knowledge of drug type and quantity as predicates for conviction on the importation offense. However, this issue is foreclosed by *United States v. Collazo*, 984 F.3d 1308 (9th Cir. 2021) (en banc), in which this Court held that a defendant need not have knowledge of the type and quantity of drugs he was distributing to be convicted under a similar statute. Luna acknowledges this authority and has only raised this issue to preserve it for further review.

expert witness responsible for authenticating these translations—the Government asked the following questions:

> Would you agree that one benefit to providing in-court interpretation is that you can ask the speaker to clarify what they mean?
> . . .
> One other benefit to in-court interpretation is the formality with which we speak in a courtroom, right?
> . . .
> Going back to comparing [translating prerecorded messages] with an in-court interpretation, do you have the benefit of asking the speaker what he or she meant?
> . . .
> Again, comparing to in-court translation services, do you have the benefit of asking a writer [of text messages] what he or she meant or seeking clarification from them?

Luna insists that these questions violated *Griffin* by emphasizing that the translator could have asked him what his messages mean if he took the witness stand. This contention is unpersuasive.

These questions do not constitute *Griffin* statements, as it is quite unlikely a jury would see them as commentary on Luna's failure to testify as to the meaning of his communications. These questions were posed during a brief colloquy between the prosecutor and Ms. Monroy about the process she used to translate Luna's messages. At the time of this colloquy, the jury was aware that Ms. Monroy had served as a courtroom interpreter, and the prosecutor was aware that her translations would be challenged. These questions enhanced Ms. Monroy's credibility by acknowledging the inherent limitations of her translations and the difficult

circumstances in which she performed them. Moreover, while Ms. Monroy was asked to address contemporaneous clarifications of oral testimony, any explanation by Luna would have been offered long after the translations were introduced. Given these contextual considerations, we are not persuaded that a jury would have viewed these four questions as anything more than a technical inquiry about the translation process.

Moreover, the prosecutor's questions would in any event be too attenuated to constitute indirect *Griffin* error. To determine whether a comment "naturally and necessarily" draws attention to a defendant's failure to testify, "[c]ourts have distinguished between those cases in which the defendant is the sole witness who could possibly offer evidence on a particular issue, and those cases in which the information is available from other defense witnesses as well." *Lincoln v. Sunn*, 807 F.2d 805, 809–10 (9th Cir. 1987); *accord Rhoades*, 598 F.3d at 510 ("Comment is unacceptable . . . if the defendant is the sole person who could provide information on a particular issue."). Here, the prosecutor's references to the author of these communications did not "naturally and necessarily" refer to Luna, as many of the incriminating messages were written by his alleged co-conspirators: "Pedro, Jr." and "Jr." Accordingly, to the extent that these questions incidentally highlight Luna's silence, they may also be viewed as commentary on the difficulties created by the unavailability of these witnesses and defense counsel's failure to call them to testify.

This possibility is sufficient to avoid implied *Griffin* error, as "[a] prosecutor may comment on a defendant's failure to present witnesses" other than the defendant, so long as the comment "is not phrased as to call attention to defendant's own failure to testify." *United States v. Passaro*, 624 F.2d 938, 944 (9th Cir. 1980).

Finally, even if these questions did amount to indirect *Griffin* error, they do not require reversal if they were harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). This Court has held that a *Griffin* error "mandates reversal only if: (1) the commentary is extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction; and (3) where there is evidence that could have supported acquittal." *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993); *see, e.g.*, *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006) (holding *Griffin* error was harmless where "the prosecutor's inappropriate comments were isolated statements" and "minimal in comparison with the weight of the evidence"). The four isolated questions Luna challenges were raised only during an authentication colloquy, were not reiterated during closing arguments, and were not invoked as the basis for conviction. Any prejudicial effect created by these questions was minimal and clearly outweighed by the substantial evidence of guilt on record. *Cf. United States v. Whitehead*, 200 F.3d 634, 639 (9th Cir. 2000) (holding similar evidence was "overwhelming" and "determinative"). Accordingly, any *Griffin* error in this case was harmless.

**AFFIRMED.**