**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JIM WAYNE THORNHILL,
*Defendant-Appellant.*

No. 18-30046

D.C. No.
1:16-cr-00008-
TMB

OPINION

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, Chief District Judge, Presiding

Argued and Submitted August 7, 2019
Anchorage, Alaska

Filed October 15, 2019

Before: Richard C. Tallman, Sandra S. Ikuta,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Tallman;
Concurrence by Judge N.R. Smith

**SUMMARY**[*]

**Criminal Law**

Affirming a conviction for receipt of child pornography, the panel held that the district court did not abuse its discretion when it admitted evidence of the defendant's prior Alaska state conviction for sexual abuse of a minor in the second degree.

The panel held that the prior conviction was within the scope of Fed. R. Evid. 414 because (1) the term "child molestation" encompasses both the crime for which the defendant was previously convicted and the present charge of receiving/possessing child pornography, and (2) the prior conviction was relevant as it tended to prove the defendant's sexual interest in children and that he used the terms on a handwritten list to knowingly receive the child pornography.

Applying the balancing test of Fed. R. Evid. 403 to the Rule 414 evidence, and the factors set forth in *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001), the panel held that the probative value of the prior conviction was not substantially outweighed by its unfair prejudice. With regard to the district court's finding that the prior conviction was helpful/practically necessary to the government's case, the panel held that the district court did not err in rendering this evidentiary decision before all testimony had been presented at trial.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring, Judge N.R. Smith wrote that the district court and the majority ignored the plain language in *LeMay* requiring trial judges to reserve judgment as to the necessity of the proffered evidence until after the other testimony has been offered, but that the error is harmless.

## COUNSEL

Darla J. Mondou (argued), Marana, Arizona, for Defendant-Appellant.

Andrew J. Klugman (argued) and Jack S. Schmidt, Assistant United States Attorneys, United States Attorney's Office, Anchorage, Alaska, for Plaintiff-Appellee.

## OPINION

TALLMAN, Circuit Judge:

Jim Thornhill appeals his jury conviction for receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). The question before us is whether the district court abused its discretion when it admitted evidence of Thornhill's prior Alaska state conviction for sexual abuse of a minor in the second degree. We conclude that it did not, and we affirm.

I

In October 2015, the FBI received a "report of harm" related to a graphic voicemail left on a dating site, which indicated that the caller was sexually abusing a 10-year-old girl. The FBI traced the call to a cannery in Juneau, Alaska.

At the cannery, Special Agent Anthony Peterson ("Agent Peterson") played the voicemail to other employees, who identified the voice as Thornhill's. Employees later found a Nokia cell phone at Thornhill's desk, along with handwritten lists of graphic search terms commonly associated with child pornography. Agent Peterson subsequently interviewed Thornhill and obtained a search warrant for the items found at his work desk. Forensic analysis of the phone ultimately revealed that over 100 images of child pornography were received and stored in various file paths on the phone between November 3, 2014, and December 25, 2014.

Thornhill was indicted on April 20, 2016, for one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). Before trial, the government notified Thornhill that it intended to introduce evidence of his prior Alaska state conviction for sexual abuse of a minor in the second degree under Federal Rule of Evidence ("Rule") 414. Thornhill had previously pleaded guilty and was convicted of sexually abusing his 11-year-old daughter in February 2008. Details of the offense included Thornhill inappropriately touching his daughter over and under her clothing while she was sleeping on several occasions between 2004 and 2007. The district court initially "reserve[d] ruling on this motion until after the Government [] introduced its other evidence at trial."

After jury selection, the parties agreed to the following stipulations:

- That each image was produced involving the actual use of minors engaged in sexually explicit conduct and was produced outside of the State of Alaska;

- That Thornhill resided at The Glory Hole, a homeless shelter in Juneau, Alaska, from September 14, 2014, through February 18, 2015; and

- That Thornhill owned the black Nokia 520 cell phone and authored the handwritten lists found at his desk.

Because of these stipulations, many of the witnesses the government had intended to call were excused from testifying, and, as a result, the government called only one witness, Agent Peterson, in the prosecution's case-in-chief.

Before opening statements, the district court ruled that Thornhill's prior conviction for sexual abuse of a minor was admissible applying the factors we articulated in *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001).

During Agent Peterson's testimony, the government introduced Thornhill's prior judgment of conviction, and it was admitted into evidence. Agent Peterson identified the prior victim as Thornhill's 11-year-old daughter. Immediately following the introduction of the prior conviction (and again at the end of the trial), the district court read a limiting instruction to the jury. The defense called no witnesses.

After approximately two days of deliberation, the jury found Thornhill guilty. He was subsequently sentenced by the district court to 262 months of imprisonment.

## II

A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). We find abuse of discretion only when we "ha[ve] a definite and firm conviction that the

district court committed a clear error of judgment." *United States v. Boulware*, 384 F.3d 794, 801 (9th Cir. 2004) (internal quotations omitted).

## III

The starting place for our analysis is Rule 414(a), which provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."        Because the term "child molestation" encompasses both the crime for which Thornhill was previously convicted, as well as the present charge of receiving/possessing child pornography, admitting the prior judgment of conviction falls under the purview of Rule 414. *See* Fed. R. Evid. 414(d)(2)(B)–(D); *United States v. Hanson*, 936 F.3d 876, 881 (9th Cir. 2019).  Additionally, the prior conviction was relevant because it tended to prove Thornhill's sexual interest in children and that he used the terms on the handwritten list to knowingly receive child pornography on the Nokia cell phone. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").        Therefore, the district court properly concluded that Thornhill's prior conviction was within the scope of Rule 414.

However, evidence admissible under Rule 414 is still subject to the balancing test under Rule 403.  Rule 403 provides that relevant evidence may be excluded, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."  Thus, "Rule 414 is not a blank check entitling the government to introduce whatever evidence it wishes, no matter how minimally relevant and

potentially devastating to the defendant." *LeMay*, 260 F.3d at 1022; *see also id.* at 1027 (urging district courts to "pay 'careful attention to both the significant probative value and the strong prejudicial qualities'" of Rule 414 evidence (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000))). To aid in this evaluation, we have previously suggested that a district court evaluate the following nonexclusive factors in the application of Rule 403 to Rule 414 evidence:

> (1) the similarity of the prior acts to the acts charged,
>
> (2) the closeness in time of the prior acts to the acts charged,
>
> (3) the frequency of the prior acts,
>
> (4) the presence or lack of intervening circumstances, and
>
> (5) the necessity of the evidence beyond the testimonies already offered at trial.

*Id*. at 1027–28 (internal quotations omitted). In addition, the district court is encouraged to "consider other factors relevant to individual cases." *Id.* at 1028; *see also id.* at 1029 (noting that one other such factor may be "the extent to which an act has been proved").

The district court found that *LeMay* factors one, three, and five weighed in favor of the government, while factor two was neutral, and factor four was irrelevant. Thornhill argues that the district court abused its discretion because the unfair prejudice caused by the introduction of his prior

conviction substantially outweighed its weak probative value.  He contends that: the acts behind the prior conviction and his current charge are dissimilar; the stipulations made by Thornhill eliminated the need for the prior conviction to connect him to the list and cell phone; the district court was required to wait until after testimony had been given at trial to determine admissibility; and the prior conviction was especially prejudicial because it involved incest.

With regard to the first *LeMay* factor, Thornhill argues that his prior conviction for sexual abuse of a minor is dissimilar to his charge of receipt of child pornography because the former is a "contact offense," while the latter is not.  While the district court acknowledged that the two offenses "differ in degree," it concluded that "the age of the victim and the kind of abuse that occurred in the prior act [was] very similar to the ages of the victims and the kinds of abuse depicted in the images of child pornography found on the Nokia cell phone."

While there is sparse Ninth Circuit caselaw regarding similarity between sexual abuse of a child and receipt of child pornography, other circuit courts and district courts have found sufficient similarity between these two offenses. *See United States v. Spoor*, 904 F.3d 141, 154–55 (2d Cir. 2018) (adopting the *LeMay* factors in a child pornography trial and upholding the district court's decision to admit a prior conviction of sexual abuse of two boys where the boys "were similar in age to the boys in the videos"); *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) ("[T]he molestations and the evidence supporting the statutory criminal elements were similar in character, *i.e.*, establishing [his] sexually deviant mental state . . . ."); *United States v. Brand*, 467 F.3d 179, 198 (2d Cir. 2006) (noting in the analogous Rule 404(b) context that "possession of child

pornography by itself shares a connection or similarity with pedophilia"); *United States v. Olson*, No. CR 16-30-BLG-SPW, 2017 WL 2226555, at *2 (D. Mont. May 19, 2017), *aff'd*, 755 F. App'x 716 (9th Cir. 2019) (first *LeMay* factor weighed in favor of the government because "[t]he kind of [sex] abuse that occurred in the alleged prior acts is quite similar to the kind of abuse depicted in the child pornography on the computer"). For example, in *United States v. Emmert*, the Eighth Circuit held that a district court did not abuse its discretion when it allowed Rule 414 evidence of prior sexual abuse where the prior "sexual abuse and [current] child pornography victims were similar in age, and [the defendant] performed or possessed images depicting similar explicit acts on each victim." 825 F.3d 906, 909 (8th Cir. 2016).

We agree with our sister circuits. Here, Thornhill's prior conviction involved inappropriate sexual touching of and contact with his 11-year-old daughter. Agent Peterson testified regarding a number of the photographs found on Thornhill's phone, most of which were pictures of young girls' exposed genitalia or of adult men penetrating young girls. Like the defendant in *Emmert*, 825 F.3d at 909, the victim of Thornhill's prior conviction was similar in age and of the same gender as the majority of the victims in the photographs. Moreover, like his prior conviction, Thornhill's searches included terms relating to an incestuous relationship between a father and daughter.[1]

---

[1] One could also imagine a more dissimilar set of acts than Thornhill's. For example, "[a]t least one military court of appeals has recognized that acts . . . where the defendant abused someone close to his age as an adolescent [] are 'extremely dissimilar' to abuse perpetrated as an adult on someone much younger and under the defendant's parental

Additionally, this case is distinguishable from *United States v. Preston*, 873 F.3d 829 (9th Cir. 2017).  In the Rule 404(b) context, the *Preston* court held that although the age of the victim in the photograph to which the defendant masturbated was similar to the victim's age in the charged act, this finding by the district court did "not adequately explain or discuss how the act of masturbating to a picture of a boy in underwear—a non-criminal act—[was] similar to the crime of real-life sexual abuse of a child." *Id.* at 841.  It further held that the district court also abused its discretion under Rule 403 because "the link between fantasy and intent [was] too tenuous to be probative." *Id.* (internal quotations omitted).  But Thornhill's prior acts were not just fantasy— they were actual crimes committed against an 11-year-old female relative, and are therefore more similar to the charged offense than the acts in *Preston*.[2]  This factor weighs in favor of the government.

We must also consider the closeness in time of Thornhill's prior acts, the frequency of those prior acts, and whether there are any intervening circumstances.  Thornhill was convicted in 2008 for acts done to his daughter from 2004–2007, and the defendant was "charged in this case with

---

control." *United States v. Stern*, 391 F. App'x 621, 623 (9th Cir. 2010) (Paez, J., dissenting) (citation omitted) (contending that evidence that the defendant "abused his sister when he was a young boy does not suggest that he is a pedophile, or that he takes advantage of positions of authority").

[2] The *Preston* court also explicitly noted, "Where the other acts offered are specific incidents of prior child molestation—which would clearly be similar to the charged offense here—Federal Rule of Evidence 414 expressly permits them to be admitted 'on any matter to which it is relevant.'" *Id.* at 841 n.2.

receiving images of child pornography between November 3, 2014, and December 25, 2014." There is no bright line rule for precluding evidence that is remote in time. *See United States v. Rude*, 88 F.3d 1538, 1550 (9th Cir. 1996). Indeed, the acts underlying the prior conviction in *LeMay* occurred about eleven years beforehand. 260 F.3d at 1029. Given the caselaw, the district court would have been within its prerogative to find this factor in favor of the government, and it did not abuse its discretion in finding that this factor was neutral.[3] As for the frequency of the prior acts, both the government and defense counsel represented to the district court that Thornhill pled guilty to molesting his daughter on a number of occasions between 2004–2007. Therefore, the frequency of the prior acts weighs in favor of the government. And the fourth factor, intervening circumstances, is not relevant here, as conceded by both parties.

*LeMay* provides that the fifth factor is the "necessity of the evidence beyond the testimonies already offered at trial." *Id.* at 1028 (quoting *Glanzer*, 232 F.3d at 1268). "Prior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." *Id.* at 1029 (alterations in original). For example, in *LeMay*, the prior acts evidence was "helpful or practically necessary" because the defendant

---

[3] The district court also was influenced by the fact that Thornhill had been in custody for a majority of the years between the prior acts and the charged acts in this trial. *See also Stern*, 391 F. App'x at 622 ("The passage of time" does not weigh in favor of the defendant "because there is no indication that he had any similar opportunities to offend target victims of choice, in part because he was incarcerated for a number of the intervening years.").

had "attacked the credibility of the [victims] and capitalized on the lack of eyewitness and expert testimony." *Id.*

Thornhill makes two arguments regarding the fifth *LeMay* factor. First, he contends that the prior conviction was not necessary because he stipulated to owning the phone and writing the terms on the lists found at his desk. Despite these stipulations, the crux of Thornhill's defense was that he did not knowingly receive images of child pornography on his phone and that somebody else had the phone during the time when the images were received on his cell phone.

Given that Thornhill was contesting the identity of who actually downloaded the photographs and his knowing receipt of the images, the district court did not abuse its discretion in finding that the prior conviction was helpful/practically necessary to the government's case to establish intent to download and absence of mistake, and thereby helpful to the jury in concluding that Thornhill was the downloader. As the district court explained, the prior conviction was "necessary for the Government's case, because it tends to prove the defendant's sexual interest in the specific conduct . . . , which in turn makes it more likely that the defendant sought and knowingly received the images of child pornography charged in the indictment."[4] *See also United States v. Woods*, 684 F.3d 1045, 1064–65 (11th Cir. 2012) (in a child pornography case, evidence of a prior child molestation "was probative of [the defendant's] interest in child pornography and therefore made it more likely that [the

---

[4] Thornhill also appears to argue that the prior conviction was not necessary because unlike in *LeMay*, he was not attacking the credibility of any victim. But this argument fails because there is nothing in *LeMay* suggesting that Rule 414 evidence is admissible *only* when necessary to bolster a witness's credibility.

defendant], and not his ex-wife or roommates, was responsible for the child pornography found on the two computers").

Second, placing emphasis on the "already offered" language of the fifth *LeMay* factor, Thornhill argues that the district court abused its discretion by ruling on the government's Rule 414 motion *before* Agent Peterson's testimony had been offered at trial.  However, *LeMay* did not hold that courts are bound to a lockstep formula; indeed, we affirmed the decision of the district judge even though he did not expressly discuss the five factors because "the record reveals that he exercised his discretion to admit the evidence in a careful and judicious manner."   260 F.3d at 1028.  Moreover, the lockstep formula for which Thornhill advocates is not only contrary to the plain language of Rule 414, which requires only that prior crime evidence be relevant, but also places an unnecessary burden on the trial court.  As a general matter, district court judges have wide latitude in deciding when and how to admit evidence at trial. *See Geders v. United States*, 425 U.S. 80, 86 (1976) ("The trial judge must meet situations as they arise," and "must have broad power to cope with the complexities and contingencies inherent in the adversary process.").  And "[p]retrial motions are useful tools to resolve issues which would otherwise 'clutter up' the trial," and they "sav[e] jurors' time and eliminat[e] distractions." *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986); *see also* Fed. R. Crim. P. 12(d) ("The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling.").

Forcing judges to wait until the end of testimony at trial to make such an evidentiary decision is contrary to Rule 414, which places no temporal limit on such admission, and

would be an unwelcome constraint when we have otherwise long trusted trial judges to moderate and run their courtrooms effectively.  *Cf. Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (noting that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial"); Fed. R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence . . . .").

To be sure, the *LeMay* court commended the district judge for his cautious approach in "reserv[ing] the Rule 403 decision until after the prosecution had introduced all its other evidence, in order to get a feel for the evidence as it developed at trial . . . ."  260 F.3d at 1028.  But this does not create a bright line rule that all trial judges in every instance must wait until testimony at trial has already been offered before ruling on these types of motions.  Indeed, in *Glanzer*, the case from which the *LeMay* court draws its five factors, we did not fault the district court for ruling on the 403 analysis after the government made an offer of proof at the beginning of trial.  232 F.3d at 1269.  And in articulating this fifth factor, the *Glanzer* court relied on *United States v. Guardia*, in which the district court also rendered its decision at the motion in limine stage.  135 F.3d 1326, 1328–31 (10th Cir. 1998) (articulating this factor as "the need for evidence beyond the testimony of the defendant and alleged victim").

Although a more complex case might warrant reserving a final ruling until after testimony had been elicited, this is not that case.  *See Glanzer*, 232 F.3d at 1269 (emphasizing the "case-by-case" nature of this type of analysis).  In its initial order on the matter, the district court outlined the law under Rules 414 and 403, but reserved ruling until it had more information.  Then, before trial, the parties agreed to

stipulate to several facts, which negated the need for many of the government's proposed witnesses. The district court had also reviewed the government's trial exhibits, the parties' trial books and briefs, and the judgment of prior conviction. The next day (the morning of trial) the district court ruled on the prior conviction issue, finding it admissible after weighing all the relevant factors. Given that the trial had only one witness and 32 exhibits, the fact that the parties had made numerous stipulations, and the parties' representations regarding the substance of anticipated evidence, the district court here was able "to appreciate fully and to weigh accurately the challenged evidence's probative value and its potential for unfair prejudice."[5] *United States v. Major*, 676 F.3d 803, 809 (9th Cir. 2012); *United States v. Charles*, 691 F. App'x 367, 370 (9th Cir. 2017). We decline Thornhill's invitation to erect an inflexible structural requirement mandating mid-trial rulings and hold that the district court did not err in rendering this evidentiary decision before Agent Peterson testified.

Finally, Thornhill argues that the prior conviction was unfairly prejudicial because "incest has [] a rare power to disgust." *Curtin*, 489 F.3d at 964 (Kleinfeld, J., concurring) (internal quotations and alteration omitted). In *Curtin*, we held that a district court erred by admitting five stories about incest written by the defendant without reading the entirety of the stories first. Although relevant and probative under Rule 404(b), the content of these stories was "depraved and patently prejudicial," and included a story which contained

---

[5] Judge Smith's concurrence likewise acknowledges that there is no likelihood the "district court would have ruled differently" mid-trial than it did pre-trial. *Post*, at 22. This is especially so where the parties had stipulated to sufficient evidence to result in calling only one witness at trial.

"a particularly graphic description" involving bestiality.  *Id.*
at 957–58.  Because the court did not read the stories prior
to admitting them, the district court was unable to conduct a
proper Rule 403 analysis, and given their highly disturbing
content, it could not be said that the error was harmless.  *Id.*
at 958.

But *Curtin* is distinguishable.  First, the evidence and
testimony elicited at Thornhill's trial was "sanitized" and
consisted only of his judgment of conviction, the age of the
victim, and the victim's relationship to Thornhill.  *United
States v. Sheldon*, 755 F.3d 1047, 1050 (9th Cir. 2014) (no
abuse of discretion where the district court allowed in "only
the sanitized record that [the d]efendant had been convicted
of possession of child pornography" and the jury did not hear
"the details of [the d]efendant's conduct that resulted in the
[prior] conviction").  Second, although incest can have a
"rare power to disgust," *Curtin*, 489 F.3d at 964 (Kleinfeld,
J., concurring) (internal quotations omitted), Thornhill had
already stipulated that he wrote the list of handwritten search
terms introduced at trial, which included disturbing
incestuous search phrases involving "daughter" and "dad."

We also note that immediately after the judgment of
prior conviction was introduced, the district court gave a
limiting instruction,[6] further preventing the potential for

---

[6] The district court instructed the jury:

> Ladies and gentlemen, you have heard evidence that
> the defendant has previously been convicted of sexual
> abuse of a minor in the second degree in violation of
> Alaska Statute 11.41.436(a)(2). You may consider that
> evidence only as it bears on intent, knowledge, or lack
> of mistake, and for no other purpose. You may not

unfair prejudice. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("[A] jury is presumed [] to follow its instructions . . . ." (citation omitted)). We therefore conclude that the introduction of Thornhill's prior conviction was not *unfairly* prejudicial. *See Sebolt*, 460 F.3d at 917 (noting that even where evidence is *highly* prejudicial, it is not necessarily *unfairly* prejudicial).

## IV

In sum, the prior conviction was relevant and helpful to show Thornhill's knowledge that the child pornography images were present on the phone, that Thornhill intentionally downloaded the images, and that those actions were motivated by his interest in sexual activity involving children. On balance, the probative value of Thornhill's prior conviction was not substantially outweighed by its unfair prejudice. The district court conscientiously evaluated the *LeMay* factors, and its decision does not "lie[] beyond the pale of reasonable justification under the circumstances." *United States v. Pineda-Doval*, 614 F.3d 1019, 1035 (9th Cir. 2010) (quoting *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000)). There was no error in its admission.

**AFFIRMED.**

---

consider that prior conviction as evidence of guilt of the crime for which the defendant is now on trial.

Although this appears to be the instruction for Rule 404(b) evidence, rather than Rule 414 evidence, any error in the instruction was likely harmless given that it limited consideration of Thornhill's prior conviction even more than required under Rule 414.

N.R. SMITH, Circuit Judge, concurring:

I agree with the majority that Thornhill's conviction should be affirmed.  However, I arrive at that conclusion by a different analysis.   I write separately to explain my reasoning and to express my concern with the majority's casual disregard of the non-discretionary language used by *United States v. LeMay*, 260 F.3d 1018, 1027–28 (9th Cir. 2001), where that panel articulated the now-familiar five-factor test applied here by the district court and at issue in this appeal.

## I.

Like my colleagues, I find no error or abuse of discretion in the district court's interpretation or application of the first four *LeMay* factors.  Thus, the decision in this appeal hinges on the district court's application of the fifth *LeMay* factor. This factor requires a court, in determining the admissibility of a prior conviction pursuant to Federal Rules of Evidence 414 and 404, to consider the necessity of such evidence in light of testimonies "*already offered* at trial."   *LeMay*, 260 F.3d at 1027–28 (emphasis added).   This language requires that the district court wait to hear the testimony offered at trial *before* determining whether to admit evidence of a prior conviction.

As the majority recognizes, this is not what occurred here. *See* Maj. Op. at 5.  The district court, in the written order it issued on the first day of trial, initially reserved ruling on the issue.  Yet, at the start of the second day of trial—and before the parties had even made opening statements—the district court announced that it had

sufficient information to rule on the admissibility of Thornhill's prior conviction at that time.[1]

The majority finds no error in the district court's course of action, because it views the *LeMay* factors as essentially advisory, a set of principles and considerations that a district court *should consider* before ruling on the admissibility of a prior conviction.  The majority asserts that judges ought not be "forc[ed] to wait until the end of testimony at trial to make such an evidentiary decision"; that erecting such "an inflexible structural requirement" would be an "unwelcome constraint" on trial judges.  Maj. Op. at 13–15.

It is true that "district court judges have wide latitude in deciding when and how to admit evidence at trial."  Maj. Op. at 13.  I also agree that district court judges ought to have such latitude.  However, in deciding that there is no bright-line rule requiring judges to wait until after other testimony is offered at trial to make its evidentiary decision in this context, the majority ignores the plain language of the test our court outlined in *LeMay*.  In *LeMay*, we "articulated several factors that district judges *must* evaluate in determining whether to admit evidence of a defendant's prior acts of sexual misconduct."  260 F.3d at 1027–28 (emphasis added).  *LeMay* says what it says: the trial court must evaluate the necessity of the proffered evidence by taking into consideration "the testimonies *already offered* at trial."  *Id.* at 1028 (emphasis added).  Thus, one cannot say

---

[1] Thornhill did not initially object to the ruling on the basis of the fifth *LeMay* factor.  Ordinarily this might constitute waiver or forfeiture of the argument he now seeks to advance on appeal.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).  However, Thornhill preserved this issue for appeal by raising an objection (in a motion to reconsider) when the government sought to introduce the prior conviction evidence during trial.

that the timing of *LeMay*'s fifth factor is discretionary. *LeMay* requires trial judges to reserve judgment on this issue until after the other testimony has been offered.

While reading *LeMay* to impose a bright-line timing requirement may "be an unwelcome constraint" on trial judges, Maj. Op. at 14, our panel is not free to rewrite *LeMay* or apply *LeMay*'s five-factor test as we think it ought to have been formulated. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc) (noting that "a three-judge panel may not overrule a prior decision of the court" absent "clearly irreconcilable" Supreme Court case law). We are instead bound to apply it as written, unless and until *LeMay* is overruled or clarified by supervening higher authority. As written, the only plausible reading of *LeMay*'s fifth factor is that it imposes a timing requirement that trial courts must follow. It does not, as the majority concludes, provide a mere suggestion or best practice rule of thumb.

Moreover, the timing requirement imposed by *LeMay*'s fifth factor makes good sense. Evidence of prior sex-offense convictions are allowed more readily than evidence of other types of convictions. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) (noting that the admission of sex-offense convictions under Rules 413–415 is not limited by Rule 404(b)'s broad prohibition against the use of propensity evidence). However, this does not mean that we should ignore the profound effect that such evidence of prior sex offenses may have on a jury, especially when compared to evidence of other types of offenses. *See* Christopher B. Mueller & Laird C. Kirkpatrick, Evidence § 4.35 (5th ed. 2012) (noting "evidence that a defendant has committed prior sexual assaults or child molestations . . . is likely to provoke substantially *more* jury antipathy against the defendant than other types of misbehavior"). As our

colleagues noted in *LeMay*, "evidence of a defendant's prior acts of molestation will always be emotionally charged and inflammatory" and may be "particularly shocking" to a jury. *LeMay*, 260 F.3d at 1030. Thus, *LeMay*'s requirement that "district judges must carefully evaluate the potential inflammatory nature of the proffered testimony, and balance it with that which the jury has already heard," *id.*, safeguards the process, ensuring that evidence of prior convictions does not unnecessarily prejudice a criminal defendant.

## II.

The district court here clearly ignored the timing requirement laid out in *LeMay*'s fifth factor. However, reversal is not required in this case, because the error was harmless.

Admittedly, the district court ruled on the admissibility of Thornhill's prior conviction evidence earlier than it should have. But it did so on the basis of both the pretrial stipulations reached by the parties and the parties' representations regarding what evidence they anticipated would be offered by the government in its case-in-chief. After carefully reviewing the record, it is clear on appeal that the trial that followed played out more or less exactly as predicted; essentially no unexpected or unanticipated testimony or other evidence was offered by the government prior to the introduction of evidence concerning Thornhill's prior conviction.[2] Indeed, there is no support in the record

---

[2] The only purportedly unanticipated testimony or evidence that Thornhill identifies relates to Special Agent Peterson's testimony, and in particular Peterson's statement that he believed Thornhill's prior conviction involved his daughter. However, the fact that this conviction involved Thornhill's daughter was not a surprise. The parties had previously disclosed that fact to the court, and the court specifically

suggesting that, but for the error of admitting evidence of the conviction before hearing all other testimony, the district court would have ruled differently. Whether the ruling was made after the parties announced their stipulations, or after the government's case-in-chief had otherwise concluded, the district court had essentially the same testimony and information before it.

As Thornhill has not shown a reasonable probability of a different outcome, the error was harmless.[3]  *See United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010).

---

noted the prior offense was for "for molesting his minor daughter from 2004 to 2007" in the written order it issued on the first day of trial.

[3] This is not to say that such a finding will always (or even often) be available in circumstances such as these. The error that occurred here is harmless only because the proceedings that followed the district court's premature ruling did not stray beyond the bounds of what the parties disclosed would be presented by the government in its case-in-chief. Thus, there were no meaningful alterations to information available to the district court between (1) when it did rule on this issue (at the start of trial), and (2) when it ought to have ruled on this issue (in light of testimony already offered) in order to comply with *LeMay*.