*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLICATION
March 9, 2023

Plaintiff-Appellee,

v

No. 359054
Berrien Circuit Court
LC No. 2020-002059-FC

JASON ROBERT HART,

Defendant-Appellant.

Before: SHAPIRO, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (victim less than 13 years of age and defendant 17 years of age or older). He was sentenced to 25 to 53 years' imprisonment. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant and his ex-wife are the parents of two children: AH and MH. Defendant's conviction relates to his conduct that occurred in approximately 2010. AH testified that defendant came into her room during the night, got into her bed with her, and digitally penetrated her vagina. AH was approximately 10 years old[1] at the time. AH was uncomfortable and confused about what happened to her but she did not tell anyone about the incident at that time. AH convinced herself that it was a vivid dream and repressed the incident. This was the only sexual contact between defendant and AH.[2]

---

[1] AH more specifically testified that she was aged 9 to 11 years old; 10 years old was her "best guess."

[2] MH testified that defendant never touched her inappropriately.

In late 2019 or early 2020, when AH was 16 years old, she heard defendant enter her bedroom in the early morning hours. It was common for defendant to enter AH's bedroom to retrieve her car keys to move her car. AH was not wearing clothing underneath her blanket because it was warm in the home. Defendant lifted the blanket, and AH heard a clicking sound that led her to believe that defendant photographed or filmed her while she was sleeping in the nude. After defendant allegedly photographed AH, she only told her then-boyfriend about the incident.[3]

In 2020, AH took a psychology class and was given an assignment to write a personal essay. Her teacher advised that the content would only be reviewed by him, and the papers would be destroyed after being read. AH wrote about the 2010 incident of sexual abuse and the more recent photo incident for her psychology assignment, which resulted in a report to the authorities and prompted the current criminal proceedings.

Over defendant's objections, the trial court also allowed the prosecutor to introduce other-acts evidence under MCL 768.27a, which involved abuse allegedly perpetrated by defendant against his stepsisters—HG and NH—when defendant was a preteen and teenager. At a pretrial hearing, and again at trial, HG and NH testified that defendant sexually abused them between approximately 1985 and 1993. Defendant, who was born in 1974, was between approximately 11 and 19 years of age at the time of the abuse. HG was approximately three years younger than defendant, and NH was approximately six years younger than defendant.

According to defendant's stepsisters, defendant abused them on an almost daily basis. This abuse included touching HG's genital area over and under her clothes. He also unsuccessfully tried to penetrate her vagina with his penis. NH testified that defendant would touch her and have her touch him. He touched her genitals with his hands, both inside and outside her vagina. He also penetrated her vagina with his penis and had her perform oral sex on him. HG and NH were both present while the other was abused; they also saw defendant abuse their brother. Defendant would have them all remove their clothing and lie naked in bed with him. Defendant also reportedly watched NH and HG in the shower.

Defendant testified on his own behalf. He denied both the 2010 incident and the more recent photography incident related to AH. He also denied sexually abusing his stepsisters. Defendant's sister, TR, testified that she lived with defendant and her stepfather when her stepfather married HG and NH's mother. At the time, TR was 16 years old, cared for the children, including HG and NH, and drove them around. She never witnessed any inappropriate sexual behavior. The jury convicted defendant of CSC-I. Defendant now appeals as of right.

---

[3] The prosecutor charged defendant with surveilling an unclothed person, MCL 750.539j(1)(a), for this incident. But, no photographs or video were found on defendant's electronic devices. In his testimony, defendant denied taking any photographs or video. Defendant explained that he was using the flashlight application on his phone to assist in finding AH's keys, and the application button made a clicking noise. The jury acquitted defendant of this offense.

## II. ANALYSIS

On appeal, defendant contends that the trial court abused its discretion by admitting other-acts evidence under MCL 768.27a that included acts committed by defendant more than 20 years before the events giving rise to the current charges and which occurred when he was approximately 11 to 19 years old. Defendant submits that the evidence was more prejudicial than probative and that it should have been excluded under MRE 403. We conclude that the trial court did not abuse its discretion by admitting the other-acts evidence under MCL 768.27a.

### A. STANDARD OF REVIEW

> We review a trial court's decision to admit or exclude evidence for an abuse of discretion. A court abuses its discretion when its decision is outside the range of principled outcomes. A trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. Further, when the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo. [*People v Hoskins*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359103); slip op at 3 (quotation marks, citations, and brackets omitted).]

### B. MCL 768.27A

Under MCL 768.27a, other-acts evidence may be admitted in cases involving allegations of certain sex offenses against minors as follows:

> (1) Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

> (2) As used in this section:

> (a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

> (b) "Minor" means an individual less than 18 years of age.

"Under MCL 768.27a, evidence is relevant, and therefore admissible, when offered to show the defendant's propensity to commit the charged crime." *People v Solloway*, 316 Mich App 174, 193; 891 NW2d 255 (2016). MCL 768.27a irreconcilably conflicts with, and supersedes MRE 404(b), which is a rule of evidence requiring the exclusion of other-acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense. *People v Watkins*, 491 Mich 450, 475-477; 818 NW2d 296 (2012); *Hoskins*, ___ Mich App at ___;

-3-

slip op at 4 (quotation marks omitted). "When a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b)." *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007). As a result, in many cases, evidence may be admitted under MCL 768.27a that previously would have been inadmissible under MRE 404(b) as improper propensity evidence. *Id*. at 619.

Evidence that a defendant committed a prior listed offense is not, however, automatically admissible under MRE 768.27a. *Watkins*, 491 Mich at 483-484. The admission of such evidence is within a trial court's discretion, *id*., and evidence otherwise admissible under MCL 768.27a remains subject to the balancing test in MRE 403, *id*. at 486. Under MRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Notably, when weighing the propensity inference under MRE 403 in the context of MCL 768.27a, a trial court must "weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487.

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id*. at 487-488.]

*Watkins* also instructs that "[t]rial courts should apply this balancing to each separate piece of evidence offered under MCL 768.27a." *Id*. at 489. It is within the trial court's discretion to determine "how many separate pieces of other-acts evidence may be admitted before the probative value of such evidence is outweighed by the danger of confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*. (quotation marks and citation omitted).

### 1. LISTED OFFENSES

On appeal, defendant briefly argues that some of the other acts, particularly those alleged to have occurred before he was 14 years old, do not qualify as listed offenses for purposes of MCL 768.27a. This argument lacks merit. As noted, MCL 768.27a(2)(a) defines a "listed offense" to mean a listed offense as defined in § 2 of the sex offenders registration act (SORA), MCL 28.722. Under MCL 28.722(i), a listed offense "means a tier I, tier II, or tier III offense."

The other acts described by NH and HG included acts of sexual penetration and sexual contact, beginning when they were under the age of 13 and continuing until NH was approximately

13 years old and HG was 15 or 16 years old. Depending on their ages, and whether the acts involved penetration or sexual contact, most of the conduct would constitute first- or second-degree CSC. See MCL 750.520b(1)(a) and (1)(b)(*i*), (*ii*); MCL 750.520c(1)(a) and (1)(b)(*i*), (*ii*). Under SORA, these offenses qualify as either Tier II or Tier III offenses, depending on NH's and HG's ages at the time of the offenses.[4] See MCL 28.722(t)(*x*), (v)(*iv*), (v)(*v*). Consequently, these are listed offenses for purposes of MCL 768.27a.

Nonetheless, defendant submits that any acts he committed before the age of 14 do not constitute listed offenses and, therefore, do not fall within the ambit of MCL 768.27a. Although defendant relies on MCL 28.722(a)(*i*) to (*iii*), these provisions do not define what constitutes a "listed offense." Instead, these provisions define the term "convicted" for purposes of SORA. See MCL 28.722(a) ("As used in this act . . . [c]onvicted means . . . ."). Generally speaking, under SORA, an individual "convicted" of a listed offense after October 1, 1995 is required to register as a sex offender. MCL 28.723(1)(a). In defining "convicted" in MCL 28.722(a), the Legislature provided that juvenile delinquency dispositions would only qualify as convictions if certain criteria were met, including that the individual "was 14 years or older at the time of the offense." MCL 28.722(a)(*iii*)(A). As a result, an individual who commits a listed offense under the age of 14 may potentially be excused from registering as a sex offender under SORA.

However, this definition of "convicted" and this limitation on registration under SORA has no impact on the admissibility of evidence under MCL 768.27a. That is, although MCL 768.27a incorporated SORA's definition of "listed offense," MCL 768.27a did not incorporate SORA's definition of "convicted" or otherwise provide that exceptions to registering as a sex offender would control the admissibility of evidence under MCL 768.27a. SORA is only relevant to MCL 768.27a insofar as it defines "listed offense," and as discussed, the other acts at issue fall within the meaning of "listed offense." In sum, contrary to defendant's arguments, regardless of his age, the other acts at issue constitute "listed offenses" for purposes of MCL 768.27a.

## 2. MRE 403 BALANCING AND *WATKINS* FACTORS

On appeal, defendant challenges the trial court's analysis of MRE 403 and the *Watkins* factors, primarily contending that his young age at the time of the other offenses and the lack of temporal proximity warranted exclusion of the other-acts evidence.

Under *Watkins*, 491 Mich at 487, the first consideration is the dissimilarity between the charged crimes and the other acts. In this case, there are both similarities and significant differences between the charged conduct and the other acts. Regarding similarities, as the trial court noted, the current charge involved an allegation that defendant digitally penetrated AH's vagina on one occasion when she was 10 years old. The other acts also involved allegations of

---

[4] To the extent the acts continued when HG was 16 years old, those acts could constitute third- or fourth-degree CSC on the basis of defendant's relationship to HG by affinity. See MCL 750.520d(1)(d); MCL 750.520e(1)(d). HG and defendant were within four years of each other, but HG denied consenting to the conduct, and absent her consent, CSC-III constitutes a Tier III offense. See MCL 28.722(v)(*iv*). CSC-IV is a Tier II offense. See MCL 28.722(t)(*x*).

sexual penetration, including both digital-vaginal, penile-oral, and penile-vaginal penetration, against NH and HG when they were young children, beginning when they were five and eight years old respectively.[5] The alleged victims were all members of defendant's household. In short, the acts share general similarities insofar as they involve the sexual penetration of young children in defendant's household. There were also allegations that defendant watched HG and NH shower, which bears some similarity to the charge that he attempted to surveil AH's unclothed person when she was 16 years old.

There were, however, significant differences. As compared to the one act of sexual penetration against one victim as described by AH, the other acts were, as defendant characterizes them on appeal, almost an "orgy" of sexual activity, with defendant allegedly performing sex acts on multiple victims, sometimes abusing multiple victims during the same incident, and allegedly performing these acts on an almost daily basis over the course of seven or eight years.

More notably, as defendant emphasizes on appeal, he was himself only 11 or 12 years old when the other acts began. He was only three years older than HG and six years older that NH. In comparison, he would have been approximately 39 years old when he was alleged to have sexually penetrated 10-year-old AH, meaning that there was a 29-year age gap between defendant and his current victim. This dissimilarity in the age gap between defendant and his victims is a pertinent consideration. Cf. *Hoskins*, ___ Mich App at ___; slip op at 5-6 (finding a pertinent dissimilarity in a 25-year age gap between the defendant and his current victim as compared to a roughly five-year gap between the defendant and an other-acts witness). See also *United States v Thornhill*, 940 F3d 1114, 1119 n 1 (CA 9, 2019) (offering as an example of a dissimilarity between other acts a situation in which "the defendant abused someone close to his age as an adolescent" as compared to "abuse perpetrated as an adult on someone much younger and under the defendant's parental control") (quotation marks and citation omitted).

Further, as defendant asserts, even apart from the age gap, his young age at the time of the other acts is itself a significant dissimilarity. Defendant was only 11 or 12 years old when the other acts purportedly began, and though the acts continued for several years, he was still only 18 or 19 years old when the other acts stopped. Cf. *Hoskins*, ___ Mich App at ___; slip op at 5-6. Although the fact that a prior act was committed when a defendant was a juvenile may be an appropriate consideration, use of juvenile sexual acts is not categorically precluded under MCL 768.27a.[6] See *People v Cowhy*, 330 Mich App 452, 46 n 6; 948 NW2d 632 (2019) (recognizing that offenses "allegedly committed as a juvenile" could be admitted under

---

[5] As noted by defendant on appeal, contrary to the trial court's statement when making its other-acts ruling, there were no allegations of anal sex by NH or HG. The trial court apparently erred or misspoke in suggesting that there had been allegations of anal sex. However, this mistake was not pivotal to the trial court's ultimate ruling. We conclude that this brief, factual error by the trial court does not warrant relief.

[6] We have previously concluded that MCL 768.27a applies during juvenile delinquency proceedings, when any other offense necessarily would have been committed when the individual was a juvenile. See *In re Kerr*, 323 Mich App 407, 414-415; 917 NW2d 408 (2018).

MCL 768.27a); see also *United States v Caplette*, 365 Fed App'x 833, 834 (CA 9, 2010) ("The fact that the prior crime was committed by Caplette while he was a juvenile may be an appropriate consideration in determining whether to admit evidence of that crime, but under our established case law evidence of a juvenile crime is not categorically inadmissible.").[7]

Although a pertinent consideration, defendant's age at the time of the other acts is not, on its own, a basis for excluding this evidence. Instead, defendant's age at the time of the other offenses as compared to his age at the time of the present charges should be considered as a circumstance bearing on the dissimilarity of the prior conduct and the current charged conduct. See *Hoskins*, ___ Mich App at ___; slip op at 5-6. Viewed in this manner, overall, there are some general similarities as recognized by the trial court in terms of the acts involving sexual penetration and child victims in defendant's household, but there are also prominent dissimilarities in terms of defendant's age, the age gap between defendant and his victims, the frequency of the abuse, and the number of victims involved. Considering that the other-acts evidence contains "prominent similarities and dissimilarities with the charged crimes," the similarity of the acts "neither cuts for or against admission of the evidence." *Id.* at ___; slip op at 6.

The second factor to consider is the temporal proximity of the other acts. *Id*. Although MCL 768.27a does not contain a specific time limitation, temporal proximity is a pertinent consideration, and the temporal divide in this case weighs in favor of excluding the other-acts evidence. Cf. *id*. (concluding that a 17-year divide weighed strongly against admission, particularly given dissimilarities between the other acts and the charged conduct). That is, under MRE 403, evidence of prior acts committed 20 to 28 years before the 2010 incident, and even longer before the photography incident in 2019, "presents a risk that the jury may give undue weight to the other-acts evidence and overlook reasonable doubts stemming from the evidence presented in support of the current charges." See *id*. Further, the strength of the propensity inference arising from the other-acts evidence is weakened when "a very long period of time has passed between the prior acts and the current charges." See *id*.

When considering a temporal gap, a temporal divide may be of less significance depending on "how similar the acts are." *Solloway*, 316 Mich App at 195. For example, in *Solloway*, we concluded that a temporal divide of 12 years did not preclude the admission of other-acts evidence

---

[7] Although nonbinding, caselaw involving the admission of other-acts under FRE 414, the federal counterpart to MCL 768.27a, supports that other acts committed as a juvenile may be admissible in a case brought against an adult defendant, despite the defendant's young age at the time of the past offenses. See, e.g., *United States v Emmert*, 825 F3d 906, 909 (CA 8, 2016) (approving admission of other-acts offense against the defendant's sister, committed 20 years before, when the defendant was 17 years old as probative of an interest in underage girls); *United States v Carino*, 368 Fed App'x 929, 929-930 (CA 11, 2010) (approving admission of other-acts evidence in a case in which the defendant was 48 years old at the time of trial and the other-acts testimony consisted of his sister's testimony that he sexually molested her when he was 16 and she was 11 years old); *United States v LeMay*, 260 F3d 1018, 1022 (CA 9, 2001) (approving the use of rape conviction from 1989, when the defendant was 12 years old, as other-acts evidence in a trial for acts defendant committed in 1997, when he was approximately 20 years old).

given the similarity of the other acts and the charged conduct, which both "involved defendant entering the victim's bedroom in the middle of the night, climbing on top of him, and engaging in some sort of inappropriate touching." *Id*. at 194-195. In comparison, as we recognized in *Hoskins*, "a lengthy temporal proximity supports exclusion of other-acts evidence where the other acts and the charged crime lack similarities." *Hoskins*, ___ Mich App at ___; slip op at 6-7. And in *Hoskins*, we concluded that the passage of 17 years weighed strongly in favor of excluding the other-acts evidence when the factual circumstances were not alike to the extent presented in *Solloway*. See *id*. The current case is more like *Hoskins* than *Solloway*. That is, defendant's conduct with his stepsisters does not share a striking similarity to his conduct with AH; instead, as in *Hoskins*, there are substantial differences between the other acts and the charged conduct. In these circumstances, as in *Hoskins*, the lack of temporal proximity weighs against admission of the evidence. See *id*.

The third *Watkins* factor is the frequency of the other acts. See *Watkins*, 491 Mich at 487. In this case, NH and HG testified that defendant abused them on an almost daily basis for several years. This was far from a one-time occurrence, and the frequency of the other acts weighs in favor of admission. See *Hoskins*, ___ Mich App at ___; slip op at 6-7.

Fourth, the trial court concluded that the presence of intervening acts did not support or weigh against admission of the evidence because neither party identified any intervening acts. Although he did not identify any intervening acts in the trial court, on appeal, defendant asserts that there are two facts pertinent to this factor: (1) the continued contact between defendant and his stepsisters after the abuse ended and (2) defendant's healthy father-daughter relationship with his daughters for many years before the conduct in 2013 giving rise to the current charge. To the extent that defendant had contact with his stepsisters after he moved out of the family home, even if this is considered an intervening act, we fail to see how it weighs for or against the admission of the other-acts evidence. That defendant saw his stepsisters does not suggest that defendant's sexual interest in minors had waned. See *United States v Stroming*, 838 Fed App'x 624, 626 (CA 2) (2021) ("[N]o intervening circumstances suggest that the defendant's interest in sex with minors had waned.").

In comparison, relevant to defendant's arguments regarding his relationship with his children, in the context of the intervening-acts factor, we note that courts have considered whether there are other acts of sexual abuse in the intervening time and, in particular, whether the defendant had access to "target" victims. For example, in *Hoskins*, ___ Mich App at ___; slip op at 7, we concluded that intervening acts did not support exclusion of the other-acts evidence when the defendant spent many of the intervening years in prison "where Hoskin's ability to sexually abuse minor victims was limited."[8] See also *United States v Stern*, 391 Fed App'x 621, 622 (CA 9, 2010) (concluding that passage of time did not constitute an intervening circumstance when there was

---

[8] In cases with additional victims in the intervening years, the presence of additional victims may be used to establish an ongoing pattern of sexual abuse, increasing the evidence's probative value and undercutting timeliness concerns with admitting older, other-acts evidence. See *People v Beck*, ___ Mich ___, ___ & n 14; ___ NW2d ___ (2022) (Docket No. 160668); slip op at 18-19 & n 14.

"no indication that [the defendant] had any similar opportunities to offend target victims of choice, in part because he was incarcerated for a number of the intervening years"). Potentially, the lack of other allegations against defendant between 1993 and 2013, and his undisputedly strong relationship with his daughters during much of that time, may have been relevant considerations when addressing intervening acts. However, defendant failed to bring these considerations to the trial court's attention, and in these circumstances—when both parties indicated in the trial court that there were no intervening circumstances—the trial court cannot be faulted for failing to sua sponte identify intervening circumstances weighing for, or against, admission of the evidence. See *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008).

Fifth, regarding the reliability of the other-acts evidence, defendant notes that the trial court incorrectly stated that defendant did not dispute that the other acts occurred when, as the prosecutor concedes on appeal, defendant in fact denied the other-acts allegations as "untrue" when responding to the prosecutor's other-acts notice. Although the trial court erred by suggesting that the other acts were undisputed, the trial court did not simply rely on the conclusion that the acts were undisputed when concluding that the other-acts testimony was reliable. To the contrary, the trial court more specifically addressed the reliability of the other-acts evidence, concluding, after hearing the testimony of both HG and NH, that they provided "clear and unequivocal" recollections of the other acts and that they both provided "notably similar" descriptions of the abuse.

Considering NH's and HG's respective testimonies at the pretrial hearing, the trial court did not abuse its discretion by concluding that the other-acts evidence was reliable. Although there were no charges or convictions related to defendant's acts involving his stepsisters, there were two witnesses available to testify about those events, and they each provided clear accounts of the abuse. Further, the fact that there were multiple witnesses to the other acts, who provided fairly consistent accounts of the abuse, bolstered the reliability of their respective testimonies. See *People v Beck*, ___ Mich ___, ___ n 10, ___; ___ NW2d ___ (2022) (Docket No. 160668); slip op at 15 n 10, 19 (noting consistency among multiple other-acts victims as supporting the reliability of the evidence). Moreover, there is no indication that NH or HG had reason to lie or to otherwise doubt their credibility. The evidence was, in short, reliable.

Lastly, the final consideration is "the lack of need for evidence beyond the complainant's and the defendant's testimony." *Watkins*, 491 Mich at 487-488. The trial court concluded that this factor weighed in favor of admitting the other-acts evidence. In this regard, there were no other witnesses to the events described by AH, and there was no physical evidence supporting her allegations. Consequently, the other-acts evidence was important for bolstering AH's credibility and establishing defendant's propensity to commit criminal sexual acts against children as relevant to establishing the truth of AH's allegations. See *Hoskins*, ___ Mich App at ___; slip op at 7-8; see also *Watkins*, 491 Mich at 492 n 92. This factor, therefore, weighs strongly in favor of admitting the other-acts evidence.

Overall, although the lack of temporal proximity weighs against admission of the other-acts evidence, the other factors are either neutral or they weigh in favor of the admission of the evidence. Recognizing that the propensity inference must be weighed in favor of the evidence's admission, the trial court did not abuse its discretion by admitting the other-acts evidence. The record shows that the trial court weighed the pertinent factors and provided a limiting instruction

to the jury regarding the use of this evidence. See *People v Duenaz*, 306 Mich App 85, 100; 854 NW2d 531 (2014). Although a close question, we cannot conclude that the trial court abused its discretion in resolving this close evidentiary question. See *Hoskins*, ___ Mich App at ___; slip op at 8.

     Affirmed.


                /s/ Anica Letica
                /s/ Kathleen A. Feeney