NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 2 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50176 |
| Plaintiff-Appellee, | D.C. No. 2:20-cr-00293-AB-1 |
| v. | |
| PAUL GARY WALLACE, AKA Bill, AKA Doc, AKA Lil Doc, AKA Lil Doc Thone, AKA Still Bill, AKA Uncle Bill, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted April 12, 2024
Pasadena, California

Before: SILER,** GOULD, and BEA, Circuit Judges.

Paul Gary Wallace appeals his conviction and sentence for RICO conspiracy

and using or carrying a firearm in relation to a crime of violence. He argues that the

district court erred by failing to suppress evidence and admitting unqualified expert

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

** The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

testimony and his admissions to prior murders. Both his conviction and sentence, he argues, must be vacated because the evidence was insufficient to support the verdict, and his sentence must be vacated because the district court improperly imposed a mandatory consecutive sentence and three conditions of supervised release. Finding no error, we affirm.

1. Wallace attacks his conviction on three grounds. First, he argues that the AK-47-pattern rifle police saw in his van *could have been* legal under California law and therefore could not have established probable cause for a search warrant. But this argument fails because he neglected to raise it before the district court, so it is therefore forfeited. Also, Wallace fails to wrestle with the fact that "assault weapons" are presumptively illegal in California *except* as specified under certain statutory provisions, Cal. Penal Code § 30605(a), and therefore officers had probable cause to suspect that the rifle was illegal pending further investigation. *See, e.g.*, *United States v. Vandergroen*, 964 F.3d 876, 881 (9th Cir. 2020). Although there were innocent explanations for the rifle, "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018).

Second, Wallace argues that the district court erred regarding expert testimony; specifically, that allowing LAPD Officer Andres Fernandez to offer expert testimony on the structure and operations of Wallace's gang, the East Coast

Crips ("ECC"), violated Wallace's rights under the Confrontation Clause; that allowing Daniel Rubin, an LAPD ballistics expert, to testify violated *Daubert* and Rule 702; and that the district court's failure to make express reliability findings requires reversal. None of these arguments has merit.

Wallace argues that Officer Fernandez's testimony was not based on his own investigations and analysis but was simply regurgitated information gleaned from prior gang member interviews. But while Fernandez's testimony relies on information obtained from other gang members, we have repeatedly affirmed the use of similar expert testimony to describe the structure, operation, and codes of conduct of criminal organizations. *See United States v. Holguin*, 51 F.4th 841, 856 (9th Cir. 2022) (collecting cases). Like our prior cases, Wallace fails to argue "that a gang investigator would not rely on the kind of information" Fernandez described. *Id.* Fernandez's testimony is similar, albeit not identical to that in *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014), and *Holguin*, both of which permitted the challenged expert testimony. *See Holguin*, 51 F.4th. at 857 ("The gatekeeping inquiry is always case-specific."). The testimony was properly admitted.

Next, Officer Rubin testified to his ballistics toolmark analysis which matched the casings fired at a murder scene to the rifle discovered in the rental van. Wallace argues that this methodology has never been subjected to peer review and is therefore inherently unreliable and inadmissible under *Daubert*. However, as the prosecution

observes, "no federal court has categorically rejected toolmark analysis," and our precedent "squarely foreclose[s] that argument." *See United States v. Johnson*, 875 F.3d 1265, 1281 (9th Cir. 2017). In the end, Wallace cannot show that admitting *any* ballistics toolmark testimony was an abuse of discretion. His criticisms rely entirely on reports that predate our approval of ballistics toolmark analysis in *Johnson*.

Likewise, Wallace objects that Officer Rubin failed to characterize his findings as within a "reasonable degree of ballistics certainty," which the court failed to correct sua sponte. But this is an overly technical reading of our precedent in *Johnson*. 875 F.3d at 1280. That phrase was used simply because it was the one the expert used; our opinion did not mandate incantation of the phrase by every expert henceforth. Here, the expert chose simply to forgo suggesting any level of certainty. To the degree that Rubin stated categorically that the bullet casings came from the same gun, Wallace's failure to object at trial dooms his objection. The district court's *Daubert* gatekeeping role does not oblige it to "step in," as Wallace puts it, when a witness makes an improper statement without objection. There was no plain error.

The parties agree that the district court erred in failing to either hold a *Daubert* hearing on Rubin's testimony or make an explicit reliability finding. *Holguin*, 51 F.4th at 853–55. Nevertheless, this was harmless error because the "record supports

the reliability of [the] expert testimony." *Id*. at 855. Rubin's conclusions were supported by other testimony, including Wallace's own repeated admissions that the rifle seized from the rental van was used in a murder, and Wallace did not avail himself of the opportunity to cross-examine Rubin.

Third, Wallace argues that evidence of his admissions of prior murders was unduly prejudicial under Rule 403. He essentially contends that, because his confessions would be insufficient standing alone to prove first degree murder of anyone beyond a reasonable doubt, they are irrelevant. But that is not how relevance works. If there is insufficient evidence—including the confessions—that Wallace murdered Brown, then that would be a challenge to the sufficiency of the evidence, not a Rule 403 challenge. Confessions to murder are highly relevant to a charge of murder, even if they are not dispositive. And although they are assuredly prejudicial, even "*highly* prejudicial" evidence is "not necessarily *unfairly* prejudicial." *United States v. Thornhill*, 940 F.3d 1114, 1123 (9th Cir. 2019) (internal quotation marks omitted). Reviewing for abuse of discretion, we find no error.

2. Wallace next claims that the jury never properly found that he had committed murder sufficient to justify his 300-month sentence on the RICO charge. That charge required the jury to find that "the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a). Under the government's theory of the case, that activity would be conspiracy to

commit murder or aiding and abetting murder. But Wallace does not address the fact that California law makes no distinction between principals and aiders and abettors. The text of the jury instructions asking the jury whether "Wallace . . . murdered" could support any theory of liability. Indeed, the jury verdict form for Wallace's § 924 charge likewise asked the jury to find "Wallace" guilty or not guilty "of using and carrying a firearm during and in relation to a crime of violence, first degree murder of Reginald Brown in aid of racketeering." Wallace never explains why "Wallace . . . murdered" cannot include coconspirator or aiding and abetting liability. And just as importantly, Wallace also ignores the fact that the jury *also* found, beyond a reasonable doubt, that Wallace's "pattern of racketeering activity" included "acts involving murder." Under the highly deferential standard of review here, we find no error. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

3.     Finally, Wallace challenges two aspects of his sentence: the imposition of a ten-year mandatory consecutive sentence and a supervised release condition prohibiting him from associating with gang members. Wallace was originally charged with violating both 18 U.S.C. § 924(c) and (j). The latter provision carries no mandatory minimum or requirement that the sentence be consecutive. But the United States notified the court it intended to dismiss the § 924(j) charge, and the jury was instructed in all respects under only § 924(c), which requires sentences be at least ten years and run consecutive to other sentences. Therefore, the jury did not

convict Wallace of violating § 924(j), the district court did not sentence Wallace under § 924(j), and at most, any typographical error on the written judgment was harmless and insufficient to show plain error.

Finally, Wallace contends that the court's supervised release condition was inappropriate in light of his pre-arrest work to bring reconciliation between rival gangs. The parties agree that our review is for plain error. *United States v. Magdaleno*, 43 F.4th 1215, 1221 (9th Cir. 2022). But Wallace ignores the district court's "wide latitude" to impose supervised release conditions. *United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009). It was not unreasonable for the district court to restrict a former gang leader from associating with known gang members, particularly given that Wallace had, while in custody, allegedly ordered another inmate stabbed. Finally, because Wallace's release from prison is decades away, he can move to modify the condition once he is on supervised release if "the situation in his community" calls for it. In short, the district court was entitled to conclude that there was "good reason to forbid" Wallace's association with ECC gang members "so as to prevent his reversion into a former crime-inducing lifestyle"—especially given that Wallace was not a "bit player" in the gang but rather had a leadership role. *Magdaleno*, 43 F.4th at 1224 (cleaned up). We find no error.

AFFIRMED.

22-50176